RECEIVED
8/15/2022
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

E.C

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

Lamont Williams
5119 W Potomac Ave, Chicago, IL 60651 )
    Plaintiff(s), )
    v. IBM )
c/o Jeffrey Rudd )
150 North Michigan Ave, Suite 2500 )
    Chicago, IL 60601 )
    Defendant(s). )

**1:22-CV-4300**

Case Number: 2021 CF 2362

**JUDGE COLEMAN
MAGISTRATE JUDGE GILBERT**

**RANDOM**

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is __Lamont Williams__ of the county of __Cook__ in the state of __Illinois__.

3. The defendant is __IBM c/o Jeffrey Rudd Jackson Lewis PC__, whose street address is __150 N Michigan Ave, Suite 2500 Chicago, IL 60601__
(city) __Chicago__ (county) __Cook__ (state) __IL__ (ZIP) __60601__
(Defendant's telephone number) (___) - _____

4. The plaintiff sought employment or was employed by the defendant at (street address)
__401 N Michigan Ave__ (city) __Chicago__
(county) ~~It~~ __Cook__ (state) __Illinois__ (ZIP code) __60601__

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

5. The plaintiff [*check one box*]

    (a) ☐ was denied employment by the defendant.

    (b) ☐ was hired and is still employed by the defendant.

    (c) ☒ was employed but is no longer employed by the defendant.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about, (month) 4 , (day) 20 , (year) 2017 .

7.1 *(Choose paragraph 7.1 or 7.2, do not complete both.)*

    (a) The defendant is not a federal governmental agency, and the plaintiff [*check one box*] ☐*has* ☐*has not* filed a charge or charges against the defendant asserting the acts of discrimination indicated in this complaint with any of the following government agencies:

        (i) ☐ the United States Equal Employment Opportunity Commission, on or about (month) 2 (day) 10 (year) 2021 .

        (ii) ☒ the Illinois Department of Human Rights, on or about (month) 3 (day) 2 (year) 2021 .

    (b) If charges *were* filed with an agency indicated above, a copy of the charge is attached. ☐ Yes, ☐ No, **but plaintiff will file a copy of the charge within 14 days.**

It is the policy of both the Equal Employment Opportunity Commission and the Illinois Department of Human Rights to cross-file with the other agency all charges received. The plaintiff has no reason to believe that this policy was not followed in this case.

7.2 The defendant is a federal governmental agency, and

    (a) the plaintiff previously filed a Complaint of Employment Discrimination with the

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

defendant asserting the acts of discrimination indicated in this court complaint.

☒ Yes (month) 3 (day) 2 (year) 2021

☐ No, did not file Complaint of Employment Discrimination

(b) The plaintiff received a Final Agency Decision on (month) 3 (day) 2 (year) 2021.

(c) Attached is a copy of the

(i) Complaint of Employment Discrimination,

☒ Yes ☐ No, but a copy will be filed within 14 days.

(ii) Final Agency Decision

☒ Yes ☐ N0, but a copy will be filed within 14 days.

8. *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

(a) ☐ the United States Equal Employment Opportunity Commission has not issued a *Notice of Right to Sue.*

(b) ☒ the United States Equal Employment Opportunity Commission has issued a *Notice of Right to Sue*, which was received by the plaintiff on (month) 3 (day) 2 (year) 2021 a copy of which *Notice* is attached to this complaint.

9. The defendant discriminated against the plaintiff because of the plaintiff's [*check only those that apply*]:

(a) ☐ Age (Age Discrimination Employment Act).

(b) ☒ Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

3

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

(c) ☐ Disability (Americans with Disabilities Act or Rehabilitation Act)

(d) ☑ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e) ☑ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f) ☐ Religion (Title VII of the Civil Rights Act of 1964)

(g) ☐ Sex (Title VII of the Civil Rights Act of 1964)

10. If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).

11. Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the ADA by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791; and for the ADEA, 29 U.S.C. § 626(c).

12. The defendant [*check only those that apply*]
(a) ☐ failed to hire the plaintiff.
(b) ☑ terminated the plaintiff's employment.
(c) ☐ failed to promote the plaintiff.
(d) ☐ failed to reasonably accommodate the plaintiff's religion.
(e) ☐ failed to reasonably accommodate the plaintiff's disabilities.
(f) ☑ failed to stop harassment;
(g) ☐ retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;
(h) ☑ other (specify): __Retaliation__

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

My team and I were subjected to discrimination, we were told not to talk Chentalh Pakrah, and Mr Norris ALFRED (our group was African American, hispanic + Native Indian)

13. The facts supporting the plaintiff's claim of discrimination are as follows:

Julie Coppola + Todd Newland threatened to write up our team members spoke to supervisor, but this was never enforced with our caucasin counter parts

14. **[AGE DISCRIMINATION ONLY]** Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15. The plaintiff demands that the case be tried by a jury. ☒ Yes ☐ No

16. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

   (a) ☐ Direct the defendant to hire the plaintiff.

   (b) ☐ Direct the defendant to re-employ the plaintiff.

   (c) ☐ Direct the defendant to promote the plaintiff.

   (d) ☐ Direct the defendant to reasonably accommodate the plaintiff's religion.

   (e) ☐ Direct the defendant to reasonably accommodate the plaintiff's disabilities.

   (f) ☒ Direct the defendant to (specify): Duely compensated for slander and descrimination wrongful termination

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

_____

_____

_____

(g) ☒ If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ☒ Grant such other relief as the Court may find appropriate.

*Lamont Williams*
(Plaintiff's signature)

Lamont Williams
(Plaintiff's name)

5719 W. Potomac Ave
(Plaintiff's street address)

(City) Chicago (State) Il (ZIP) 60651

(Plaintiff's telephone number) (708) - 674-9911

Date: 8/9/2022

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

6

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

JCK Federal Building
230 S. Dearborn
Suite 1866 (Enforcement, State and Local & Hearings)
Suite 2920 (Legal & ADR)
Chicago, IL 60604
Intake Information Group: (800) 669-4000
Intake 'nformation Group TTY: (800) 669-6820
Chicago Direct Dial: (312) 872-9777
Administration Fax: (312) 588-1255
Enforcement/File Disclosure Fax: (312) 588-1260
Federal Sector Fax: (312) 588-1265
Intake Fax: (312) 588-1286
Legal Fax: (312) 588-1494
Mediation Fax: (312) 588-1498
Website: www.eeoc.gov

# NOTICE OF DISCLOSURE RIGHTS

Parties to an EEOC charge are entitled to review and obtain copies of documents contained in their investigative file. Requests must be made in writing to Sylvia Bustos and either mailed to the address above, faxed to **(312) 588-1260** or sent via email to sylvia.bustos@eeoc.gov (please chose only one method, no duplicate requests). *__Be sure to include your name, address, phone number and EEOC charge number with your request__.*

If you are the Charging Party and a RIGHT TO SUE has been issued, you may be granted access to your file:

* __Before filing a lawsuit,__ but within 90 days of your receipt of the Right to Sue, or

* __After your lawsuit has been filed.__ If more than 90 days have elapsed since your receipt of the Right to Sue, include with your request a copy of the entire court complaint (with court stamped docket number) or enough pages to determine whether it was filed based on the EEOC charge.

If you are the *Respondent* you may be granted access to the file *only after* a lawsuit has been filed. Include with your request a copy of the entire court complaint that includes an official court stamped docket number.

Pursuant to federal statutes, certain documents, such as those which reflect the agency's deliberative process, will not be disclosed to either party.

You must sign an Agreement of Nondisclosure **before** you are granted access to the file, which will be sent to you after receipt of your written request. (Statutes enforced by the EEOC prohibit the agency from making investigative information public.)

The process for access to the file will begin no later than ten (10) days following receipt of your request.

When the file becomes available for review, you will be contacted. You may review the file in our offices and/or request that a copy of the file be sent to you. Files may not be removed from the office.

Your file will be copied by **Aloha Print Group**. You are responsible for the copying costs and must sign an agreement to pay these costs before the file will be sent to the copy service. Therefore, __it is recommended that you first review your file__ to determine what documents, if any, you want copied. EEOC will not review your file or provide a count of the pages contained in it. If you choose not to review your file, it will be sent __in its entirety__ to the copy service, __and you will be responsible for the cost.__ Payment must be made directly to **Aloha Print Group**, which charges 15 cents per page.

(Revised 05/20/19, previous copies obsolete)



**U.S. Equal Employment Opportunity Commission**
**Chicago District Office**

230 S. Dearborn
Suite 1866
Chicago, IL 60604
(312) 872-9777
TTY (800) 669-6820
Fax: (312) 588-1255

Respondent: IBM
EEOC Inquiry No.: 440-2021-01980

January 26, 2021

Lamont Williams
5119 West Potomac Avenue
Chicago, IL 60651

Dear Williams:

This is with reference to your recent inquiry (an office visit, phone call, correspondence, or electronically submitted intake questionnaire) in which you alleged employment discrimination by the above-named respondent. The information provided indicates that the matter complained of is subject to the statute(s) checked off below:

    [ X ]    Title VII of the Civil Rights Act of 1964 (Title VII)

    [ ]    The Age Discrimination in Employment Act (ADEA)

    [ ]    The Americans with Disabilities Act (ADA)

    [ ]    The Equal Pay Act (EPA)

    [ ]    The Genetic Information Nondiscrimination Act (GINA)

The attached EEOC Form 5, Charge of Discrimination, is a summary of your claims based on the information you provided. To enable proper handling of this action by the Commission you should:

    (1) Review the enclosed charge form and make corrections.

    (2) Sign and date the charge in the bottom left hand block where I have made an "X".

    (3) Return the signed charge to this office.

<u>These steps are necessary if you wish to file a charge.</u> No charge has been filed because the correspondence you submitted was not signed. Since charges should be filed within the time limits imposed by law, <u>please complete these steps as soon as possible</u>. Please call me at the number listed below if you have any questions. If you have to call long distance, please call collect.

IF WE DO NOT RECEIVE YOUR SIGNED CHARGE WITHIN 30 DAYS OR HEAR FROM YOU WITHIN 30 DAYS, WE WILL ASSUME THAT YOU DECIDED NOT TO FILE A CHARGE OF DISCRIMINATION WITH EEOC.

Please be aware that after we receive your signed charge, the EEOC will send a copy of the charge to Illinois Department Of Human Rights 100 West Randolph Street Floor 10-100 Chicago, IL 60601 as required by our procedures. If that agency processes the charge, it may require the charge to be signed before a notary public or an agency official. The agency will then investigate and resolve the charge under their statute.

STATE OF ILLINOIS
DEPARTMENT OF HUMAN RIGHTS
INVESTIGATION REPORT

| | | | |
|---|---|---|---|
| **Complainant:** | LAMONT WILLIAMS | **IDHR No.:** | 2021CF2362 |
| **Respondent:** | IBM | **EEOC No.:** | 21BA11223 |

**Investigator:** SLL  **Supervisor:** [signature]  **Date:** 5/13/22

**Issue/Basis:**　　　　　　　　　　　　　　　　**Finding:**

A.　Harassment/Race, American Indian　　　　A.　Lack of Substantial Evidence
B.　Discharge/Race, American Indian　　　　　B.　Lack of Substantial Evidence

**Jurisdiction:**

Alleged violations:

　　　　　　　　　　　　　　　　　　　　　　A.　2017-August 24, 2020
　　　　　　　　　　　　　　　　　　　　　　B.　August 24, 2020

Charge filed:　　　　　　　　　　　　　　　　March 8, 2021
Charge perfected:　　　　　　　　　　　　　October 21, 2021
Amendments:　　　　　　　　　　　　　　　None
Number of employees:　　　　　　　　　　　15+

**Verified Response:**

Note: Pursuant to Public Act 100-0492, a Verified Response ("VR") is not required for a charge filed on or after September 8, 2017, and one was not provided.

**Employment Data:**

Respondent indicated that there were 17 Deskside Support Representatives working at Complainant's work location. Respondent indicated that they were unaware of how many of these were race, American Indian, as Complainant is.

**Uncontested Facts:**

1. Respondent is a technological company that provides database support to multiple accounts ("customers").

2. Complainant was hired by Artech, LLC ("Artech") in 2017 as a Deskside Support Representative to provide IT helpdesk services on behalf of Respondent. Artech was responsible for determining and providing Complainant's pay.

3. Complainant was supervised by Julie Coppola ("Coppola") (white), Team Lead, who worked for Respondent. Coppola dictated what work tasks Complainant performed, oversaw his day-to-day work performance, and determined his work hours, lunch breaks, and days off.

*[handwritten annotations: (PRO SE) Fee Waiver HIBBLER Self Help 312-45 5641]*

4. On or around August 24, 2020, Complainant was recommended for discharge **(Exhibit A)** due to a statement made by Wakeel Oden ("Oden") (non-American Indian), R1 Inventory Specialist, and he was notified of his discharge by Artech.

**Complainant's Allegations-Count A**:

Complainant, a former Deskside Support Representative, alleges that he was harassed by Respondent due to his race, American Indian, after he was instructed not to speak to members of Respondent's management who are race, Asian, while non-American Indian employees did not receive the same instruction.

**Respondent's Defenses-Count A:**

Respondent's articulated non-discriminatory reason for their actions is that Complainant's alleged harassers worked for Respondent's customer, R1, and Complainant never complained about harassment.

**Investigation Summary-Count A:**

    A. **Complainant's Evidence.**

        1. Complainant stated that he began working for Artech, an employment contractor, in January or February 2017. After being hired by Artech, he was assigned to work as a Deskside Support Representative for Respondent. His pay was determined by Artech, and he was paid by Artech. Coppola, a Respondent employee, and Coppola dictated what work tasks he performed, what hours he worked, and supervised his day-to-day performance.

        2. Complainant initially stated that he was harassed on at least four (4) occasions between the time of his hiring in 2017 and August 24, 2020 when Chintal Parkrah ("Parkrah") (Asian), R1 Supervisor/Manager, instructed that Complainant and his co-workers were not to direct questions to himself, Oden, or Alfred Norris ("Norris") (Asian), unknown work title. Complainant later stated that Coppola instructed him and his co-workers to not speak to Parkrah, Oden, or Norris. Complainant knew that Parkrah and Norris are both Asian (of the country India) but he did not know Oden's race. Complainant believed that not being able to ask questions of Parkrah was harassment because Parkrah often possessed information that Complainant and his colleagues needed in the performance of their duties. If Complainant or his colleagues did speak with Parkrah directly, Coppola would remind them that they had been instructed not to. Complainant also stated that Coppola directed any employees who needed equipment to Oden. Complainant believed Parkrah was a member of management at Respondent but he did not know if Oden or Norris were management employees.

3. Complainant stated that Respondent has a harassment policy, but he did not know any details about it. He did not tell anyone that he felt harassed, nor did he make a complaint of harassment to Respondent's management.

4. Complainant stated that he may have indicated his race on his Artech job application, but he never mentioned it in the workplace. No one at Respondent ever made any negative statements related to his race, American Indian, nor was race mentioned in reference to employees not asking questions of Oden, Parkrah or Norris. James McCornell ("McCornell") (black), Deskside Support Representative, Robert Nevils ("Nevils") (black), Deskside Support Representative, John Childs ("Childs") (black), Deskside Support Representative, Eric Cooley ("Cooley") (black), Deskside Support Representative, and Daniel Cruz ("Cruz") (white), Deskside Support Representative, witnessed the harassment, and were also treated similarly. One employee named Peter (last name unknown) (white), Deskside Support Representative, was not instructed to not allowed to ask questions of Oden, Parkrah, or Norris.

B. **Respondent's Evidence.**

1. Todd Newland ("Newland") (black), Respondent First Line Manager, stated that Respondent has and follows a policy **(Exhibit B)** on Non-Discrimination and Harassment. To make a complaint of harassment, a contract employee would make a report to their employing agency, which in Complainant's case was Artech. Contract employees may also make a harassment complaint directly to Respondent against Respondent employees. If a complaint of harassment is made against a Respondent employee, Respondent will investigate. However, Complainant never complained of harassment and Oden and Parkrah, Complainant's named alleged harassers, were not Respondent employees. Oden and Parkrah were employed by Respondent's customer, R1.

2. Odinaka Ezeokoli ("Ezeokoli") (black), Respondent U.S. Employee and Labor Relations Leader, stated that Respondent has never received any complaints about employees not being able to ask questions of race, Asian, supervisors.

C. **Complainant's Rebuttal.**

1. Complainant did not provide any additional information other than what was previously identified in Complainant's section.

**Analysis-Count A:**

There is no substantial evidence that Complainant was harassed due to his race, American Indian. Complainant alleges that he was harassed due to his race, but Respondent denies Complainant was discriminated against and states that his alleged harassers were not Respondent employees and that no complaints of alleged harassment were ever made.

According to the law, actionable harassment must be severe, pervasive, egregious, and related to Complainant's basis named in the instant charge. In this case, the charge alleges that Oden and Parkrah told Complainant not to talk to race, Asian, supervisors. However, Complainant later stated that it was Parkrah who, on approximately four (4) occasions, indicated that Complainant and his co-workers should not direct questions to race, Asian, supervisors and Coppola who reminded Complainant and his co-workers of Parkrah's directive when they did not follow it. Complainant indicated that no mention of race was ever made when issuing the instructions and McCornell (black), Nevils (black), Childs (black), Cooley (black), and Cruz (white) were directed similarly. Thus, there is no substantial evidence that Complainant's allegations are related to his race, American Indian. Although Complainant stated that the alleged harassment occurred on approximately four (4) occasions, there is no substantial evidence that Complainant's allegations of harassment are severe or egregious. Thus, in this case, there is no substantial evidence that Complainant's allegations rise to the level of actionable harassment.

Respondent indicated that if Complainant had reported harassment against a Respondent employee, they would have investigated the allegations. However, Respondent maintains that Oden and Parkrah, Complainant's named alleged harassers, were not Respondent employees. Additionally, even if Oden and Parkrah were Respondent employees, it is uncontested that Complainant never complained about being harassed. Thus, there is no substantial evidence that Complainant was harassed due to his race, American Indian.

**Findings and Conclusion-Count A:**

A finding of **Lack of Substantial Evidence** is recommended because Complainant's allegations of harassment are not severe, pervasive, or related to Complainant's race, others who are not race, American Indian, were treated similarly, and Complainant never reported being harassed.

**Complainant's Allegations-Count B:**

Complainant, a former Deskside Support Representative, alleges that he was discharged by Respondent on August 24, 2020, due to his race, American Indian, after Oden falsely accused him of walking off the job.

**Respondent's Defenses-Count B:**

Respondent's articulated non-discriminatory reason for their actions is that R1 requested that Artech remove Complainant from his assignment there after becoming aware that Complainant had indicated he would deliberately provide incorrect information to new incoming employees.

**Investigation Summary-Count B:**

    A.    **Complainant's Evidence.**

        1.    See Complainant's Evidence – Count A.

        2.    Complainant stated that as a Deskside Support Representative, he was tasked with performing "fixes", imaging machines, dispatching work

tickets, and performing remote desktop fixes. He was never notified of any concerns with his job performance and had no disciplinary action or attendance issues. Shortly before August 24, 2020, Complainant and his co-workers were informed by Coppola that Respondent was expecting new employees to start work, and that contract employees, such as Complainant, were expected to assist with moving furniture in preparation for the new employees' arrival.

3. Complainant stated that on August 24, 2020, he left Respondent to work remotely from home, as he often did. Shortly after leaving the building, he received a Skype message **(Exhibit C)** from Oden asking if he (Complainant) was out for lunch and what time his work shift ended. Complainant made Oden aware that he would be working from home the remainder of the day, and Complainant worked from home until 5:00 p.m. Complainant has screenshots **(Exhibit D)** to show that he worked his entire work shift on August 24, 2020. However, on August 25, 2020, he was told by Childs that Oden had indicated that he would be suggesting Complainant be discharged for walking off the job the previous day.

4. Complainant stated that moving furniture is not in the contract between Artech and Respondent and it was not his job to help Respondent move furniture on August 24, 2020. Complainant initially stated that on August 25, 2020, he was called by Kiran Thapa ("Thapa") (unknown race), Artech employee, and informed that he was being discharged because he had walked off the job on August 24, 2020. Complainant later indicated that Thapa did not tell him why he was being discharged. Complainant received no documentation of his discharge, and Thapa did not tell him who the decision-maker in his discharge was.

5. Complainant stated he does not know Respondent's policies on discipline or discharge. He does not believe that he was discharged due to his race, American Indian. He believes he was discharged in retaliation for refusing to move furniture. He does not know of any other employees discharged similarly, but knows that Nevils, Childs, Cooley, and Cruz continued to work at Respondent after his discharge.

B. **Respondent's Evidence.**

1. See Respondent's Evidence – Count A.

2. Newland stated that Respondent does have a policy on discharge for Respondent employees; however, that policy was not applicable to Complainant. Any employment actions related to discipline, discharge, or overall performance for Complainant would be Artech's responsibility. R1 was Respondent's customer. Respondent outsourced R1's helpdesk support to several vendors, including Artech. On August 24, 2020, R1 recommended that Complainant be removed from his assignment there

because they had been told **(Exhibit E)** that Complainant had stated that he planned to knowingly provide incorrect information to incoming new employees.

3. Newland stated that R1 had already informed Respondent that they would be ending their contract with them on or around September 30, 2020 in order to use a different helpdesk support provider, a company called NIIT. Complainant was among the outgoing contract employees tasked **(Exhibit F)** with assisting incoming NIIT employees with learning R1's daily operations and how to perform their work tasks. However, on or around August 21, 2020, R1 management became aware **(Exhibit E)** that Complainant had stated that he intended to provide incorrect information to incoming NIIT employees. R1, believing that Complainant was attempting to sabotage R1's transition to NIIT's services, recommended **(Exhibit A)** that Complainant be removed from his assignment there. Respondent was informed of Complainant's discharge but was not the decision-maker in Complainant's discharge.

4. Newland stated that no other employees, contract or otherwise, had stated that they intended to deliberately provide incorrect information to incoming new employees.

5. Documentation of an e-mail **(Exhibit E)** dated August 21, 2021 from Chris Miller ("Miller") (unknown race), R1 Global Manager, End User Computing, states that Coppola had "often told the (Respondent) team to do things and to not tell R1", had "purposely tried to hide" things from R1 and was attempting to redirect staff to busy work to get them off-task. In the e-mail Miller states, "It seems like another sabotage moment to me with her ongoing contradictory statements."

6. Documentation of an email **(Exhibit A)** from Miller dated August 25, 2021 states, "Please immediately terminate the following (Respondent) resources..." The document names Coppola and Complainant.

C. **Complainant's Rebuttal.**

1. Complainant stated that he never indicated that he was going to provide incorrect information to incoming NIIT employees, nor was he ever told that this was the reason for his discharge. He believes he was discharged because Oden accused him of walking off the job on August 24, 2020.

**Analysis-Count B:**

There is no substantial evidence that Complainant was discharged due to his race, American Indian. Complainant alleges he was discharged by Respondent due to his race, but Respondent denies that Complainant was discriminated against and states that R1 requested Artech remove

Charge No. 2021CF2362
Page 8 of 8

D.    Julie Coppola, former Team Lead (white)
      847-507-7971
      Staff left voicemails for the witness on April 19, 2022 and April 20, 2022 requesting that they contact staff back for an interview. However, the witness did not return staff's calls.

E.    Complainant named John Childs, Daniel Cruz, James McCornell, and Robert Nevils as witnesses to the alleged harassment. However, the Department's investigation has revealed that the allegations made by Complainant do not constitute actionable harassment; therefore, the aforementioned witnesses were not interviewed.

**Exhibits:**

    A.    Discharge recommendation e-mail
    B.    Non-Discrimination and harassment policy
    C.    Skype message
    D.    Screenshots
    E.    Coppola and Complainant e-mail
    F.    NIIT e-mail

IRSHELL
Rev. 11/2021

_____    _____
Investigator                               Date